IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALAIN LEONETTI | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CAUSE No. _____ |
| | § | |
| Baylor University Medical Center, James | § | |
| Touchy, Stephen Burger, Jeffrey Schussler, | § | |
| Marisa Chacon, Robert Glatz, Shameem | § | |
| Nazeer, Erica Davidson, Natalie Stacy, Neal | § | |
| Morgan | § | |
| Mindy Hilferty, and Tiffany Rambo | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## ORIGINAL COMPLAINT

1.      In March 2015, Mr. Alain Leonetti, a French national, resident of France, and school teacher, went to the Baylor University Medical Center at Dallas (Baylor) after suffering loss of consciousness at a restaurant. After failing to receive proper care, attention, or empathy by Baylor or its employees and/or agents, Mr. Leonetti was finally released—with high troponin levels—and cleared for commercial airplane travel. Mr. Leonetti subsequently suffered a massive cardiac event, multiple surgeries, artificial coma, and life-threating anemia because of the defendants' willful and wanton behavior, recklessness, and negligence. In addition, while Mr. Leonetti was attempting to seek treatment at Baylor, his daughter committed suicide. Because of defendants' actions, which led to Mr. Leonetti's sudden and dramatic health deterioration, Mr. Leonetti was unable to bury his daughter, awakening from his coma after her funeral.

ORIGINAL COMPLAINT—Page 1

I.     **PARTIES**

2.     Plaintiff Alain Leonetti is a French national currently residing in France and can be served through counsel of record.

3.     Defendant Baylor University Medical Center (Defendant Baylor) at Dallas is located at 3500 Gaston Avenue, Dallas, TX 75246, can be served through its registered agent, CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, USA, and is subject to the Court's jurisdiction.

4.     Jeffrey Schussler, MD, was an employee, agent or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

5.     James Touchy, MD, was an employee, agent or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

6.     Robert Glatz, MD, was an employee agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

7.     Shameem Nazeer, MD, was an employee, agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

8.     Stephen Burger, MD, was an employee, agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

9.     Tiffany Rambo, RN, was an employee, agent, or apparent agent of

Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

10.     Marisa Chacon, RN, was an employee, agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

11.     Erica Davidson, RN, was an employee, agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

12.     Natalie Stacy, RN, was an employee, agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

13.     Mindy Hilferty, RN, was an employee, agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

14.     Neal Morgan, DO, was an employee, agent, or apparent agent of Defendant Baylor University Medical Center working in Dallas, Texas, at the time of the events at issue in this suit, and is subject to the Court's jurisdiction.

15.     Defendants in paragraph 3 to 13 are collectively referred to as Defendants.

## II.     JURISDICTION & VENUE

16.     This Court has jurisdiction over this action pursuant to 28 USC section 1332 (a)(2). The amount in controversy exceeds $75,000.

17.     Venue is proper in this district under 28 USC section 1391(b)(1) and (b)(2).

## III.     FACTS

ORIGINAL COMPLAINT—Page 3

18.     On March 22, 2015, Mr. Leonetti was brought to Baylor by EMS. He lost consciousness multiple times and was found lying on the floor of a restaurant by EMS personnel. Mr. Leonetti, among other symptoms was tachycardic and anemic.

19.     On March 22, 2015, Baylor noted Mr. Leonetti's elevated troponin levels but found the cause to be "indeterminate; possible cardiac damage and increased risk." Later that day, a physician noted that the preliminary diagnosis include "Acute Myocardial Injury." Baylor's records note that "[s]erial measurements may help assess the possibility of acute myocardial injury." Yet, nothing was done to address Mr. Leonetti's condition and he was not administered tests sufficient to adequately diagnose and treat him.

20.     Further, although by 10:17 pm on March 22, 2015, Baylor and its agents and/or employees, notably the Primary Attending Dr. Robert Glatz, determined that Mr. Leonetti had to be admitted, Baylor failed to admit Mr. Leonetti for hours. Indeed, Baylor failed to have sufficient inpatient beds to admit Mr. Leonetti. Mr. Leonetti, feeling his condition worsen and failing to receive a bed at Baylor, left to get some rest and returned first thing in the morning for additional testing.

21.     On March 23, 2015, Mr. Leonetti returned to Baylor for follow up testing. Although Mr. Leonetti was subjected to additional testing, and was still supposed to be admitted, Baylor—again—failed to admit Mr. Leonetti. Rather, Baylor's agents and/or employees expressed irritation and antagonism towards Mr. Leonetti for his "cell phone" use.

22.     Baylor's agents and/or employees ignored the fact that Mr. Leonetti was dealing with the suicide of his adult daughter and the resulting impact this had on him, his other children, and the remainder of his family. Notes from that day have notations such

as, "Pt . . . would not get off his phone. Pt speaking [F]rench and kept telling staff to hold on."

23.     Mr. Leonetti's troponin levels were tested and found to be high. Indeed, Mr. Leonetti's troponin levels were found to be "Above upper panic limits." And Mr. Leonetti was advised he could not fly home on a commercial airline. Baylor and its employees and/or agents also noted that there was possible cardiac damage and "increase risk." At 1:30 pm, Dr. Jeffrey Schussler, MD, returned a call for a consult and stated there was "no need for cardiology consult unless cardiac pathology identified." He added, "agrees with our obtaining an ECHO." It is unclear whether an ECHO was ever obtained.

24.     At 2:02 pm, Baylor and its agents and/or employees noted that Mr. Leonetti was "to be admitted." Yet, despite the lab results, nearly three hours later, Mr. Leonetti was still not admitted. Frustrated, and exhausted, Mr. Leonetti went to a nearby hotel to get some rest and came back a third day, March 24, 2015, for more testing.

25.     On March 24, 2015, Mr. Leonetti returned to Baylor. Again, Mr. Leonetti's troponin levels were tested and found to be high. Mr. Leonetti, growing increasingly worried about the care he was receiving, attempted to have his doctor in France talk to the physicians at Baylor. The latter refused to speak with the French physicians. Mr. Leonetti also stated he would do anything to receive adequate care. His pleas were ignored.

26.     Mr. Leonetti was finally expelled from Baylor, stopped from re-entering the emergency department, and discharged with *both* elevated troponin levels and explicit clearance to travel, "Therefore, it is SAFE for YOU to TRAVEL." His discharge notice further added, "You have been cleared for Travel on any domestic or international airline." After three days at Baylor and numerous inappropriate tests, Mr. Leonetti was incorrectly

diagnosed with "Pneumonia-Community Acquired; Anemia." He was given two doses of antibiotics and sent on his way. Unfortunately, Baylor and its agents and/or employees, acting willfully and wantonly, recklessly, and/or negligently, were wrong.

27.     Defendants not only misdiagnosed Mr. Leonetti with a respiratory infection, failed to diagnose his cardiac event, and the cause of his anemia, but they also ultimately abandoned him and, in an effort to remove him from the hospital, incorrectly told him it was "safe" to travel by commercial line. In fact, it was *not* safe for Mr. Leonetti to travel, Mr. Leonetti was suffering from blocked arteries, and was in danger of an imminent cardiac event that severely injured him and nearly killed him.

28.     Mr. Leonetti, based on Defendants' clearance, returned to France and arrived on March 25, 2015. On March 27, 2015, the day after his return to France, he was admitted by ambulance to a French hospital. His troponin levels were 1.5. His resulting cardiac episode resulted in the placing of a stent and damage. He was also scheduled for an angioplasty the day after his daughter's funeral. Unfortunately, Baylor had also failed to properly diagnose the cause of Mr. Leonetti's anemia. On March 28, 2015, French physicians had to urgently intervene to address Mr. Leonetti's internal hemorrhage of the digestive tract. Mr. Leonetti's injuries and health worsened. He was placed in an artificial coma for five days to save his life and to limit the damage to his health. He also had to receive significant amounts of blood transfusions. During these events, his French physicians, warning him the end was imminent, counseled him to say his goodbyes to his family. He did so.

29.     On April 1, 2015, after his daughter's burial, Mr. Leonetti's French healthcare team awakened him. He woke up to find out he was never to see his daughter

again and he had missed her funeral. His recovery has been long and painful, requiring significant healthcare interventions. Mr. Leonetti has also developed depression as a result of the events that resulted from Baylor's and its agents' wanton and willful conduct.

## IV.   CAUSES OF ACTION

30.    Mr. Leonetti brings this cause of action against Defendants pursuant to the Texas Medical Liability Act, Tex. Civ. Prac. & Remd. Code Chapter 74 (TMLA).

### A.  Theories of Liability

31.    Mr. Leonetti brings health-care liability claims against Defendants for treatment, lack of treatment, or other departure from accepted standards of medical care, health care, safety, or professional or administrative services directly related to health care.

32.    Baylor is liable for the negligence acts of its employees or agents, including nurses and physicians, under a theory of respondeat superior.

33.    Baylor is liable for the negligent supervision of its staff.

34.    Baylor is liable for formulating faulty administrative policies that deprived Mr. Leonetti of admission to Baylor after the medical staff had determined admission was in his best interest.

35.    Baylor is liable for refusing service to Mr. Leonetti in emergency care by pretextually discharging him when it was unsafe to do so and refusing him access back to the emergency center.

### B.  Defendants Are Subject to the TMLA

36.    Defendants are physicians pursuant to Tex. Civ. Prac. & Rem. Code section 74.001(a).

37.    Defendants are healthcare providers pursuant to Tex. Civ. Prac. & Rem.

Code section 74.001(a).

**C. Defendants Owed Duties of Care to Mr. Leonetti, Which They Breached**

38.     Defendants, collectively, treated Mr. Leonetti recklessly.

39.     Defendant physician specialists failed to use the degree of skill ordinarily employed in similar circumstances by similar specialists in the field.

40.     Defendant nurses failed to treat Mr. Leonetti was a reasonably prudent nurse would under the same or similar circumstances.

41.     Defendant emergency room physicians, with willful and wanton negligence, deviated from the degree of care and skill that is reasonably expected of an ordinarily prudent physician or health-care provider in the same or similar circumstances.

42.     Defendant Baylor failed to use the standard of care that a reasonably prudent similar institution, while using ordinary care, would have done under the same or similar circumstances.

43.     Defendants also breached their duties to Mr. Leonetti by abandoning him:

   a.   Defendants Baylor, and its agents and/or employees, unilaterally severed the physician-patient relationship;

   b.   The severance occurred without reasonable notice or without providing adequate alternative medical care; and

   c.   The severance occurred when continued medical attention was necessary.

44.     Defendants' breach of their duties to Mr. Leonetti were the proximate and actual causes of Mr. Leonetti's damages.

45.     As a result of Defendants' actions, Mr. Leonetti suffered pecuniary, physical, and emotional damages.

a. Mr. Leonetti is no longer able to work and will not be able to work for the foreseeable future. As a result, lost wages until retirement total at least $1 million. Mr. Leonetti will also suffer a reduced retirement income based on his reduced working income.

b. Mr. Leonetti now suffers from depression, which caused and will continue to cause mental anguish, and will require medical treatment including medication and therapy.

c. Mr. Leonetti was unable to see his daughter one last time before her funeral, causing mental distress and emotional pain and anguish, including inability to properly grieve for her.

d. Mr. Leonetti suffered severe physical pain and suffering, including a cardiac event, multiple surgeries, a medically induced coma, and physical impairment.

e. Mr. Leonetti incurred medical expenses in the US and in France totaling over USD$ 100,000.

## V.   PRAYER FOR RELIEF

46.   Plaintiff Leonetti seeks to recover damages for:

a. physical pain and suffering,

b. emotional pain and suffering,

c. mental distress,

d. special damages,

e. loss of consortium,

f. disfigurement,

g.  physical impairment,

h.  inconvenience,

i.  loss of enjoyment of life,

j.  future discomfort,

k.  lost past and future wages and income,

l.  interest,

m.  attorneys' fees and costs, and

n.  all other remedies to which plaintiff is entitled in law or equity.

Respectfully submitted,

*/s/ Maria-Vittoria G. Carminati*
MARIA VITTORIA G. CARMINATI
STATE BAR NO. 24065007
917 FRANKLIN, 4TH FLOOR
HOUSTON, TEXAS 77002
TEL: +1.281.826.9552
FAX: +1.281.929.0802
EMAIL: giugi@carminatilaw.com
**LAWYER FOR PLAINTIFF ALAIN
LEONETTI**

**ORIGINAL COMPLAINT—Page 10**